AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA Seth Schlessinger)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  18-1157-M |
| Sharif El-Battouty | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __1/9/17 - 7/18/18__ in the county of __Bucks__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(g) | Engaging in Child Exploitation Enterprise. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel J. Johns, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/18/2018

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Lynne A. Sitarski, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Daniel J. Johns, being first duly sworn, hereby depose and state as follows:

1. I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) in Philadelphia, Pennsylvania. I am thus a "federal law enforcement officer," as defined by the Federal Rules of Criminal Procedure. I have been employed as a Special Agent since March 2007. I am presently assigned to the Philadelphia Division's Crimes Against Children squad, which investigates sex trafficking of children and prostitution investigations, child pornography, and kidnappings, among other violations of federal law. I have gained experience through training at the FBI Academy, various conferences involving crimes against children, and everyday work related to conducting these types of investigations.

2. This affidavit is being made in support of the issuance of the attached criminal complaint charging Sharif EL-BATTOUTY with engaging in a child exploitation enterprise, in violation of Title 18, United States Code, Section 2252A(g).

3. The statements in this Affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause in support of issuance of the attached complaint, I have not included each and every fact known to me concerning this investigation, but rather only those facts that I respectfully submit are necessary in order to establish probable cause.

## STATUTORY AUTHORITY

4. Title 18, United States Code, Section 2252A(g) prohibits any person from engaging in a child exploitation enterprise. In turn, Title 18, United States Code, Section 2252A(g)(2)

1

provides that a person engages in a child exploitation enterprise within the meaning of the section if the person violates (among other portions of Title 18) Chapter 110 of the United States Code, as part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons. Chapter 110 of the United States Code prohibits, among other offenses, the production of child pornography (18 U.S.C. § 2251(a)); the advertisement of child pornography (18 U.S.C. § 2251(d)); the distribution or receipt of child pornography (18 U.S.C. § 2252(a)(2)); and the possession of child pornography (18 U.S.C. § 2252(a)(4)(B)). Each of the aforementioned violations is a felony offense.

**PROBABLE CAUSE**

5. On or about May 23, 2017, an FBI online covert employee (OCE) was investigating the production of child pornography on the mobile app "live.me"[1] and browsed to a website called "8ch.net." On 8ch.net, the OCE observed a link to an URL permitting browser-based access to Service A, a computer-based communication service described further below. Next to the link was an image that depicted two females who appeared to be children wearing bikinis.

6. The OCE clicked on the above link and was re-directed to another URL to a website operated by Service A-2. This particular website was entitled "Service A-1," and the title was accompanied by a thumbnail image of two minor female children kissing each other.

---

[1] Live.me is a social media platform for sharing, creating and viewing live streaming videos. Live.me users can stream live video from mobile platforms like Apple iOS or Google Android. Videos streamed from Live.me users can be viewed through the Live.me mobile applications or an internet browser.

[2] Service A, Service A-1, and similar terms, as well as Username 1 and similar terms, are pseudonyms used in this affidavit in lieu of the actual terms in order to protect the integrity of an ongoing investigation.

2

7. Service A owns and operates a free-access all in one voice and text chat application and website with the same name that can be accessed over the web. A user creates a Service A account and can then communicate with other Service A users.

8. Service A users can exchange private messages between each other, participate in chat discussions, and voice chat. Service A users can also create chat rooms, which functions as message boards that can be accessed only by Service A users who have an invitation link. Service A-1, mentioned above, is one such chat room on Service A. Within these chat rooms, users can set up different sub-rooms wherein users can type written text, including links to files stored on external file-storage sites, and also upload files under a particular size limit, which can be viewed by all users of the sub-room. Service A users can share files larger than the limit allowed by providing hyperlinks to file sharing websites. Service A chat rooms can have one or more moderators. Moderators have the ability to manage other users, including but not limited to removing users from the chat rooms, elevating users hierarchically, and granting users additional permissions. The moderators of a chat room can categorize users of the chat rooms into hierarchical groups with customized labels and can configure those groups to give users in each group different levels of access.

9. The OCE's review of the Service A-1 chat room revealed that the vast majority of its content consisted of discussions about using web cameras and social-media applications to obtain sexually-explicit images and videos of minor children; images and videos of minor children exposing their vaginas, which at times were uploaded to the Service A-1 chat room and its sub-rooms; and links to download child pornography images and videos from external file-storage sites. Most of the children viewed by the OCE appeared to be approximately between the ages of 11 and 17 years old. The Service A-1 page also included some discussion of adults engaging in

sexual activity via web camera. However, the majority of the activity focused on the depiction of minors engaged in sexually explicit activity on web cameras. For example, in the course of a discussion in the one sub-room of Service A-1 regarding the merits of utilizing virtual private network (VPN) technology to mask users' IP address and identity, Username 1 commented on April 15, 2017: "Just the fact that we're all hanging in here, which is a chatroom where underaged sexual content is shared around is enough reason for one to get a VPN." User name 1 continued, stating: "Fuck when you download something from dropfile Your ISP can see what you downloaded What if govt authorities read ISPs logfiles."

10. Based on the OCE's undercover observations on Service A-1, a federal search warrant was issued, on or about July 10, 2017, by the Honorable David R. Strawbridge, United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to Service A-1. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of Service A-1, the content of some text chats occurring on Service A-1, and some private messages sent by users of Service A-1.

11. The Service A-1 chat room was ultimately shut down by Service A. Members of the Service A-1 chat room proceeded to open additional similar chat rooms on Service A, including: Service A-2, Service A-3, Service A-4, and Service A-5. The OCE gained access to Service A-3, Service A-4, and Service A-5. The OCE observed each of these chat rooms contained many of the same users as Service A-1 and were operated for the purpose of discussing, obtaining, and distributing child exploitation material including child pornography files. Service A-5 is the only of the aforementioned Service A chat rooms that is still operating.

12. Based on the OCE's undercover observations on Service A-2, Service A-3, Service A-4, and Service A-5, a second federal search warrant was issued, on or about November 17, 2017,

by the Honorable Linda K. Caracappa, Chief United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to the aforementioned chat rooms. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of those chat rooms, the content of certain text chats occurring in the chat rooms, and some private messages sent by users of those chat rooms.

13. The OCE observed a user of Service A-1 using the online names "Username 5" and "Username 6." A review of the search warrant return from Service A and undercover recordings by the OCE revealed, among other activity, the following activity related to users "Username 5" and "Username 6," each involving a video or image that I have reviewed and that, in my opinion, constitutes a depiction of a minor engaged in sexually explicit conduct as defined by federal law:

    a. On 01/25/2017, Username 5 posted an image on Service A-1 that depicted a minor child who appeared to be between 11 and 13 years old exposing her vagina to the camera. Username 5 stated in the posting "or this live.me chick."

    b. On 06/23/2017, Username 5 posted two images on Service A-1. The images depicted a minor female who appeared to be between the ages of 13 and 15 years old exposing her breasts and a close up of a vagina, which is believed to be of the same minor female due to the nature of the posting. The latter image contained the statement "snapchat is the best win out there."

    c. On 10/26/2017, Username 6 posted an image on Service A-5. The image depicted a minor female who appeared to be between the ages of 9 and 13 years old exposing her anus and vagina and contained the watermark Omegle.com3 in the bottom

---

3 Omegle is a video streaming service website that connects strangers in a video and text chat conversation. Based upon my training and experience Omegle is commonly used for child exploitation purposes.

5

left corner.

    d.    On 12/03/2017, Username 6 posted an image on Service A-5. The image depicted a minor female who appeared to be between the ages of 11 and 13 years old inserting a plunger into her vagina and exposing her breasts.

14.    Records from Service A show that user "Username 5" accessed Service A servers using certain IP addresses between November 2016 to July 2017. The FBI sent a subpoena to Verizon Internet Services who responded on July 26, 2017. The FBI sent a second subpoena to Verizon Internet Services who responded again on October 13, 2017. Verizon's records showed that the subscriber of both IP addresses at the relevant times was M E BATTOUTY, 51-25 72nd Street, Woodside, NY 11377.

15.    The search warrant results from Service A indicated that at some point the "Username 5" account was deleted. A short time thereafter, the "Username 6" account was created. User "Username 5" communicated with another user whose Service A account was taken over by law enforcement. When Username 5 was deleted, Username 6 resumed communication with this user. A review of these conversations revealed Username 5 and Username 6 acted as the same individual based on the nature of the postings and communications. Additionally, Username 5 and Username 6 utilized the same IP addresses.

16.    Records from Service A show that user "Username 6" accessed Service A servers using a different IP address from September 16, 2017 to January 9, 2018. The FBI sent a subpoena to Verizon Internet Services who responded on June 7, 2018. Verizon's records showed that the subscriber of this IP address from September 16, 2017 to January 9, 2018 was also M E BATTOUTY, 51-25 72nd Street, Woodside, NY 11377.

17.     On July 18, 2018, a federal search warrant was executed at 51-25 72nd Street, Woodside, NY 11377, Sharif El-BATTOUTY's residence. EL-BATTOUTY was present at the time the warrant was executed. During the execution of the search warrant, EL-BATTOUTY agreed to be interviewed by law enforcement. EL-BATTOUTY stated he has been using Service A for approximately 2 years and accessed Server A as recently as July 17, 2018. EL-BATTOUTY was a senior ranking member which he stated allowed him to kick other users out of the group. While using Server A, EL-BATTOUTY confirmed that he utilized Username 5 and Username 6. EL-BATTOUTY was familiar with other users on Service A, although he stated he never met the other users in person. EL-BATTOUTY stated users on Service A sent links to child pornography allowing other users to click on the links and access the content. EL-BATTOUTY admitted that he too clicked on the links and accessed child pornography in this manner. EL-BATTOUTY admitted to "catfishing," meaning that he participated in video chats with minor females and asked them to perform sexual acts while naked, and that he misrepresented his identity to the minor victims to accomplish this. EL-BATTOUTY confirmed that many of the minors agreed and performed sexual acts for him. EL-BATTOUTY then took screenshots of the activity and saved the files to his digital devices. Law enforcement located child pornography on an external hard drive owned by EL-BATTOUTY. The child pornography included images of minor females engaged in sexually explicit activity to include sexual acts and the lascivious exhibition of their genitals. Law enforcement seized multiple digital devices from EL-BATTOUTY, which EL-BATTOUTY admitted belonged to him.

## VENUE

18.     The child exploitation enterprise in which EL-BATTOUTY engaged, as described above, extended at all relevant times to the Eastern District of Pennsylvania. The enterprise was

open to members from anywhere in the world, and the child pornography material disseminated by the enterprise was made available to any person able to access Service A, including from the Eastern District of Pennsylvania. Further, the OCE's activities over the various Service A chat rooms comprising the enterprise were conducted in the Eastern District of Pennsylvania. Finally, the investigation has revealed the participation of at least one member of the enterprise who lived in the Eastern District of Pennsylvania and participated in the enterprise from the Eastern District of Pennsylvania, from as early as July 2016 until that member's arrest by federal authorities in February 2018.

## CONCLUSION

18. Based upon the information above, I respectfully submit that there is probable cause to believe that Sharif El-BATTOUTY has engaged in a child exploitation enterprise, in violation of Title 18, United States Code, Section 2252A(g), in that EL-BATTOUTY has violated Chapter 110 of Title 18 of the United States Code as part of a series of felony violations involving three or more separate incidents and more than one victim, and has committed those offenses with three or

more other persons. I therefore further respectfully request that the Court issue the attached complaint and warrant charging EL-BATTOUTY with that offense.

_____
Daniel J. Johns
Special Agent, Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED
BEFORE ME THIS __18th__ DAY
OF JULY, 2018.

_____
HON. LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

9