IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| SHARIF EL-BATTOUTY | : | NO. 18-352-3 |

MEMORANDUM

Bartle, J.                                              January 23, 2024

Before the court is the motion of Sharif El-Battouty
to vacate, set aside, or correct his sentence under 28 U.S.C.
§ 2255 (Doc. # 289).  El-Battouty raises thirteen ineffective
assistance of counsel claims in his motion.

I

El-Battouty was a high-ranking member of a child
exploitation enterprise and conspiracy which occurred over
approximately two years on Discord, an online platform that
allows its users to create or join chatrooms, called "servers."
Members of the same server can communicate with each other as
well as share images and videos.  El-Battouty participated in
two private chatrooms, "Camgirls" and "Thot Counselors," which
were utilized by members to distribute sexually explicit images
and videos of children.  In these servers, El-Battouty used the
alias "Fritos" and was one of the highest-ranking and most
prolific members.  As a member of this page, he produced

explicit .gif files ("Gifs"), which are short video clips that
play in a continuous loop.

These chatrooms were discovered in May 2017 by an
undercover FBI special agent, who located an invitation link to
a Camgirls chatroom.  Discord shut down the server Camgirls in
the summer of 2017, and at that point, the members migrated to
Thot Counselors.  The FBI special agent continued to monitor the
new server.

On July 18, 2018, a federal search warrant was
executed at El-Battouty's residence.  During its execution, he
agreed to be interviewed by law enforcement.  He admitted to
participating on Discord for approximately two years and had
accessed the relevant server as recently as July 17, 2018, only
the day prior to the execution of the search warrant.  Law
enforcement located child pornography on an external hard drive
he owned.  He was arrested that day.

El-Battouty was first indicted on August 21, 2018.  A
superseding indictment followed on September 25, 2018.  The
grand jury charged him and five others with one count of
engaging in a child exploitation enterprise in violation of 18
U.S.C. § 2252A(g), and one count of conspiracy to advertise
child pornography in violation of 18 U.S.C. § 2251(d), (e).

El-Battouty was found guilty by a jury on both counts
on May 2, 2019.  The court denied his post-trial motion for

acquittal and a new trial.  Count II, charging conspiracy to advertise child pornography, was thereafter dismissed on the motion of the Government.  The court sentenced him on Count I to thirty years of imprisonment, a term of supervised release for life, and restitution of $5,421.45.  Our Court of Appeals affirmed.  See United States v. El-Battouty, 38 F.4th 327 (3d Cir. 2022).

II

A motion under Section 2255 is a form of collateral attack identical in scope to federal habeas corpus.  See Davis v. United States, 417 U.S. 333, 343 (1974); see also 28 U.S.C. § 2255.

To establish ineffective assistance of counsel, petitioner must first demonstrate that his counsel's performance fell below "an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  To demonstrate deficient performance, El-Battouty must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [a] defendant by the Sixth Amendment."  Id. at 687.

El-Battouty must also prove he was prejudiced by his counsel's objectively deficient performance.  He must establish that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have

-3-

been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  Id. at 694.

In assessing petitioner's ineffective assistance of counsel

claims, the court "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable

professional assistance."  Id. at 689.

Counsel is given leeway to employ the strategy he or

she considers most effective under the circumstances.  See id.

at 691.  Ultimately, El-Battouty must overcome the presumption

that the actions of his counsel may be considered reasonable

trial strategy.  Id. at 689 (citing Michel v. Louisiana, 350

U.S. 91, 101 (1955)).

III

El-Battouty's first claim is that the verdict lacked

the requisite unanimity.  He avers that based on the verdict

form, it is impossible to determine which if any three predicate

violations the jury relied upon, since the jury was only asked

to record "guilty" or "not guilty."  He cites United States v.

McGarity for the proposition that in the absence of a specific

finding, it is improper to infer unanimous agreement as to a

specific offense.  669 F.3d 1218, 1250 (11th Cir. 2012).  In

that case, six of the defendants had been found guilty of three

counts, which also served as predicate offenses under the child

exploitation enterprise statute.  In that case, the Eleventh

-4-

Circuit held that where a court fails to instruct a jury that each member must agree as to the three predicate offenses committed by a defendant that constitute a violation of the child exploitation enterprise statute, the error is harmless when defendants are convicted of three such predicate acts.  Id. at 1250-51.

This court charged the jury that its verdict as to El-Battouty must be unanimous as to each element of each crime. There is a presumption that the jury follows the given instructions.  United States v. Givan, 320 F.3d 452, 462 (3d Cir. 2003).  The verdict sheet states that the jury unanimously found El-Battouty guilty on both counts.

El-Battouty is correct that the jury must unanimously agree that the Government proved the three predicate offenses involved here in order to find him guilty of engaging in a child exploitation enterprise.  Nonetheless, there is no requirement that the verdict sheet must record the jury's finding as to each predicate act.  Simply providing an instruction that the offenses with all its elements must be unanimous is sufficient. See Richardson v. United States, 526 U.S. 813, 824 (1999); see also United States v. Edmonds, 80 F.3d 810, 814 (3d Cir. 1996). While the court could have decided to submit special interrogatories to the jury, they are generally disfavored.

United States v. Desmond, 670 F.2d 414, 416 (3d Cir. 1982).
Defendant's counsel was not deficient.

Ground two of El-Battouty's motion argues that the
superseding indictment was defective.  Specifically, he avers
Count I failed to set forth the particular conduct at issue as
well as the specific location where the alleged offenses took
place.[1]  He also maintains that the indictment did not contain a
criminal action number and was not signed by the foreperson.

An indictment is sufficient when it identifies all
elements of an offense and is sufficiently specific so as to
"show[] with accuracy to what extent [a defendant] may plead a
former acquittal or conviction."  Russell v. United States, 369
U.S. 749, 763-64 (1962) (quoting Cochran & Sayre v. United
States, 157 U.S. 286, 290 (1895)) (quotation marks omitted).  It
must also specify the temporal proximity during which the
offense occurred.  See, e.g., United States v. Huet, 665 F.3d
588, 596 (3d Cir. 2012), abrogated on other grounds, United
States v. De Castro, 49 F.4th 836 (3d Cir. 2022).  There is no
requirement that the prosecution present an indictment that is
more specific than the statutory language.  Id. at 595.

---

1.   El-Battouty also argues that the indictment was defective
as to Count II.  As Count II was dismissed on the Government's
motion, this argument is moot.

Here, the superseding indictment identified the statute, listed the elements of the violation, and outlined the temporal proximity and location of the enterprise.  See id. Thus the indictment was not defective, and his counsel was not ineffective for failing to challenge it.

El-Battouty also argues that the indictment did not include a criminal action number and was not signed by the grand jury foreperson.  Although there was no criminal action number printed on the first page, the Clerk's Office nonetheless provided the full action number, Criminal Action No. 18-352, upon the document's public filing.  The failure of the foreperson to sign the indictment, even if true, does not affect the sufficiency of the indictment.  See, e.g., United States v. Willaman, 437 F.3d 354 (3d Cir. 2006).  Therefore, El-Battouty's motion to vacate his sentence fails on this ground.

In his third ground, El-Battouty submits that the court should not have allowed the introduction into evidence of videos of the underlying clips he posted on Discord as Gifs.  He states this evidence was inadmissible under Federal Rule of Evidence 404(b) as evidence of propensity to commit the crime. On the contrary, these clips are relevant for attribution – that El-Battouty was in fact the person who created and circulated the Gifs in question.  As he did not stipulate as to the source of the video clips, this was an acceptable use of the evidence.

Because these clips were admissible, he cannot claim that his counsel was ineffective for failing to object to the introduction of this evidence.

In ground four, El-Battouty claims that the prosecution proved "possession" or "production" instead of "advertising" or "distributing," as alleged in the indictment. To demonstrate prejudice, he must show a variance, that is a material difference between the indictment and the evidence presented at trial and that this material difference prejudiced a substantial right. United States v. Daraio, 445 F.3d 253, 262 (3d Cir. 2006) (citing United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996)). Ultimately, El-Battouty has not shown that the prosecution proved facts during trial materially different from what was charged in the indictment. The original source videos were presented in order to demonstrate his control over the videos which he then produced into Gifs and distributed on Discord. This is not materially different than alleged in the superseding indictment. As there was no variance, El-Battouty is unsuccessful in claiming that his counsel was ineffective for failing to raise this issue.

Ground five of El-Battouty's motion argues that the court failed to review videos posted by co-conspirators prior to ruling them admissible and that his counsel failed to request that the court do so. In support of this contention, he cites

-8-

United States v. Cunningham for the proposition that the court must know exactly what the evidence contains before choosing to admit it.  694 F.3d 372, 387 (3d Cir. 2012).  In that case, the court found that the introduction of the videos was unfairly prejudicial in light of the fact that the defendant stipulated to the criminal content of the videos.  Here, El-Battouty made no such stipulation regarding the video's criminal content.  See United States v. Fritz, 643 F. App'x 192, 196 (3d Cir. 2016).  Additionally, these videos posted by co-conspirators were admissible as the government was entitled to introduce evidence of co-conspirators' criminal acts.  See United States v. Lopez, 271 F.3d 472, 480 (3d Cir. 2001).  In any event, having seen the videos at the trial, the court would not have rejected their admissibility even if it had reviewed them in advance as the videos were not unfairly prejudicial under the circumstances.

Next, El-Battouty maintains that counsel did not move for dismissal under the Speedy Trial Act for the prosecution's failure to file his superseding indictment within thirty days from the date on which he was arrested.  18 U.S.C. § 3161(b).  He also claims that the arraignment on the superseding indictment was delayed.

In his reply, El-Battouty further alleges that the original indictment, filed on August 21, 2021, violated his right under the Speedy Trial Act.  That Act provides that "any

-9-

. . . indictment . . . shall be filed within thirty days from the date on which such individual was arrested[.]"  18 U.S.C. § 3161(b).  While thirty-four days had elapsed from his arrest to the date the indictment was filed, the Speedy Trial Act excludes the date of the defendant's arrest, the time that it takes for the defendant to be transferred to the charging district, and any day on which there is a proceeding.  See United States v. Berk, 614 F. Supp. 2d 86, 89 (D. Me. 2009) (citing Fed. R. Crim. P. 45(a)).  The following days are excluded: (1) the date of his arrest, July 18, 2021; (2) the day during which he was transferred to the charging district, July 19, 2021; (3) the date of his initial appearance in the charging district, July 27, 2021; and (4) the date of his probable cause hearing, July 31, 2021.  With these exclusions, he was timely indicted within the thirty-day period.  Thus the original indictment did not violate El-Battouty's right under the Speedy Trial Act.

A superseding indictment does not violate § 3161(b) when it is issued more than thirty days after the defendant's arrest but before the original indictment is dismissed.  See United States v. Rahamin, 168 F. App'x 512, at 517 (3d Cir. 2006).  As the original indictment had not been dismissed, this superseding indictment did not violate the Speedy Trial Act. Additionally, the delay in arraigning El-Battouty did not affect

his rights as he was on notice regarding the claims against him.
See id. at 516-17.  As there was no violation of the Speedy
Trial Act, his counsel was not ineffective for failing to object
on this ground.

In ground seven, El-Battouty claims that his counsel
was ineffective for failing to file a pre-trial motion to
suppress his statements made during the execution of the search
warrant at his home which he shared with his parents.  He
submits that his statements were taken in violation of Miranda.
Miranda warnings are only required when a suspect is subject to
a custodial interrogation.  See Miranda v. Arizona, 384 U.S.
477-78 (1966).

To determine whether a suspect is in custody, the
court must consider whether the suspect was told he was free to
leave, the length of the interrogation, the location of the
questioning, whether the officers used coercive tactics, and
whether the suspect voluntarily submitted to questioning.
United States v. Willaman, 437 F.3d at 359-60.  These
circumstances are analyzed under a reasonable person standard.
See United States v. Amos, No. 20-3298, 2023 WL 8636910, at *3
(3d Cir. Dec. 14, 2023); see also United States v. Varela-
Garcia, 87 F. App'x 795, 797 (3d Cir. 2004) (citing Stansbury v.
California, 511 U.S. 318, 323, 24 (1994)).  Questioning a person
in his or her own home "softens" an interrogation, and

-11-

"moderates a suspect's sense" that he or she is in custody.  See
United States v. Killingsworth, 118 F. App'x 649, 651 (3d Cir.
2004) (citing United States v. Czichray, 378 F.3d 826 (8th Cir.
2004)).

        The evidence at trial showed that eight FBI special
agents and one New York City police detective executed a search
warrant in the morning at El-Battouty's residence where he lived
with his parents.  Each FBI agent possessed visible weapons
during their search which is standard procedure for executing
search warrants as noted by Agent Deragon.  Upon their arrival,
Agent Deragon and one other agent requested to speak with El-
Battouty in his parents' bedroom at the back of the house.  At
the beginning of the conversation, Agent Deragon immediately
informed El-Battouty that he was not under arrest and that he
was free to leave at any time.  Agent Deragon testified at trial
that El-Battouty was "amenable" to this explanation, and the
agents began their questioning.  Throughout this conversation,
Agent Deragon had information to believe that a participant of
the relevant Discord servers resided at that location.  However,
he did not know at that time that El-Battouty was the individual
accessing those Discord servers.  The two agents and El-Battouty
spoke for approximately ninety minutes before he was arrested.

        Based on testimony presented at trial and under the
totality of the circumstances, El-Battouty has not established

-12-

that the officers were obligated to administer Miranda warnings.
He has not alleged any additional relevant information.  As the
officers did not violate his rights under Miranda, his counsel
was not ineffective for failing to file a pre-trial motion to
suppress those statements.

In ground eight, El-Battouty argues his counsel erred
by failing to question jurors as to whether they could be fair
and impartial in this case.  The voir dire procedure in this
case was proper.  The court first advised the panel of the
nature of the case.  It did ask multiple questions about the
ability of the panel members to be fair and impartial and to
decide the case solely on the evidence and the court's
instructions on the law.  A number of the panel members were
excused for cause.  Both defense and the Government were
permitted to propose voir dire questions, and the court took
those questions into consideration.  It is the court's general
practice to ask all the questions during voir dire.  No person
was selected for the jury who expressed an inability to be fair
and impartial.  The trial counsel was not ineffective during the
voir dire process.

Additionally in ground eight, El-Battouty argues that
his counsel was ineffective for failing to strike certain jurors
due to various personal experiences and obligations that may
have affected their perception of and attention at the trial.

-13-

These jurors were determined by the court to be able to serve fairly and impartially based on their voir dire answers.  El-Battouty's counsel exercised peremptory challenges.  Counsel must make strategic decisions in exercising these challenges. El-Battouty has not demonstrated that his counsel's decisions were unreasonable trial strategy.  Strickland, 466 U.S. at 689.

El-Battouty avers in ground nine that his counsel was ineffective for failing to object to statements by a co-conspirator and cooperating witness that he was (1) familiar with El-Battouty's username on Discord and (2) the alleged activities associated with his Discord username.[2]  El-Battouty maintains that these statements were inadmissible hearsay.  He is incorrect.  First, the cooperating witness was permitted to state he was familiar with the username "Fritos" for the purposes of identification of a person that declarant had already previously identified.  Fed. R. Evid. 801(d)(1)(C). This cooperating witness was also able to testify as to statements associated with his Discord username.  These statements are admissible as statements of a co-conspirator under Federal Rules of Evidence 801(d)(2)(A) and (E).  His

---

2.    Additionally, El-Battouty claims that he did not receive Jencks material for the cooperating witness.  It is clear from his counsel's questioning at trial on the witness' statements to law enforcement that this material was received.

-14-

counsel was not ineffective for failing to object to their admission.

El-Battouty further argues in ground ten that his counsel was ineffective because counsel did not timely object that the prosecution failed to prove venue beyond a reasonable doubt.  In a child exploitation enterprise case, venue is proven when a member of the enterprise engages in overt acts within the district.  See, e.g., United States v. Grovo, 826 F.3d 1207, 1214-15 (9th Cir. 2016).  This is the same standard as in a conspiracy case.  See United States v. Perez, 208 F.3d 318, 329 (3d Cir. 2002).[3]

El-Battouty argues that there was no "evidence linked" to the Eastern District of Pennsylvania in the record.  At trial, the Government presented evidence that the cooperating witness, a co-conspirator of El-Battouty, accessed the Discord servers, "Cam Girls" and "Thot Counselors," while in Bucks County, which is in the Eastern District of Pennsylvania.  Venue was proper, and his counsel was not ineffective for failing to raise this issue.

---

3.   El-Battouty also argues Perez is not relevant as his offense occurred on the Internet and therefore, a different standard should apply.  However, our Court of Appeals has identified this same standard as appropriate in child exploitation cases involving the use of the Internet.  See United States v. Heatherly, 985 F.3d 254, 263 (3d Cir. 2021).

-15-

In ground eleven, El-Battouty avers that his counsel
was ineffective for not asking the court further to define
"distribution" in the jury instructions.  Our Court of Appeals
ruled on direct appeal that "distributing" is an ordinary term
and requires no additional explanation.  El-Battouty, 38 F.4th
at 330-31.  Accordingly, El-Battouty's counsel was not
ineffective for failing to request such an instruction.

El-Battouty, in ground twelve, raises two separate
claims.  First, he alleges that his counsel was ineffective for
failing to object to the prosecutor's characterizations during
closing statements of El-Battouty as a "pedophile" and that he
and his co-conspirators were "buddies" during closing
statements.  Prosecutorial misconduct may cause a conviction to
be overturned when a defendant can demonstrate that it has
denied him or her due process.  Donnelly v. DeChristoforo, 416
U.S. 637, 643 (1974).  Taking these characterizations in light
of the entire trial and the severity of the misconduct, neither
statement amounts to the denial of due process.  Referring to
the co-conspirators as "buddies" does not amount to a denial of
due process as the members of the Discord chat were familiar
with each other.  Likewise, the reference to El-Battouty as a
"pedophile" is similarly insufficient to overturn his
conviction.  His co-conspirators referred to themselves in this
way on Discord, and this was relevant evidence of their state of

-16-

mind.  El-Battouty's counsel was not ineffective in failing to object.

Next, El-Battouty claims in ground twelve that his counsel was ineffective for failing to object to the introduction of victim impact statements at sentencing.  In reviewing a within-guideline sentence, which El-Battouty received, the sentence is presumed to be reasonable, as "both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case."  Rita v. United States, 551 U.S. 338, 347 (2007).

El-Battouty avers that the victim impact statements introduced at sentencing were "fabricated" due to the fact that he had not specifically distributed illegal material relating to these witnesses.  El-Battouty was sentenced for his role in an enterprise.  Simply because he had not personally distributed the illegal material the victims referenced in their impact statements does not mean such statements were fabricated. Evidence of victim impact is relevant due to his participation in the enterprise, even if El-Battouty was not the principal actor.  In any event, this claim does not overcome the presumption of reasonableness of the sentence, which was within the sentencing guidelines.

-17-

Finally, El-Battouty claims in ground thirteen that his counsel was ineffective at sentencing for failing to object to the order of forfeiture of possessions which did not include evidence.  Objections to orders of forfeiture are not cognizable under Section 2255.  United States v. Ross, 801 F.3d 374, 380 (3d Cir. 2015).  This final ground is therefore unavailing.

The motion of El-Battouty to vacate or set aside his sentence under 28 U.S.C. § 2255 will be denied, and no certificate of appealability will be issued.